STATE ex rel. SILVER BOW COUNTY et al., Relators,
v. BRANDJORD, State Administrator of Public Wel-
fare, et al., Respondents.

(No. 7,865.)

(Submitted August 22, 1938.   Decided August 25, 1938.)

[82 Pac. (2d) 589.]

232

*Mr. John K. Claxton* and *Mr. H. A. Tyvand,* respectively County Attorney and Assistant County Attorney of Silver Bow County, for Relator, submitted a brief; *Mr. Tyvand* argued the cause orally.

*Mr. Frank Woody, Mr. George Harris* and *Messrs. Booth & Booth,* for Respondents, submitted a brief; *Mr. Woody, Mr. Harris* and *Mr. Ed. Booth, Sr.,* argued the cause orally.

*Mr. Harrison J. Freebourn,* Attorney General, *Amicus Curiae, Mr. Mark H. Derr,* Assistant Attorney General, and *Mr. Clarence Hanley,* Special Assistant Attorney General, submitted a brief; *Mr. Derr* and *Mr. Hanley* argued the cause orally.

Opinion: PER CURIAM.

This is a proceeding in mandamus. Its purpose is to compel respondents to make a grant in aid to relator of the sum of $28,000 for general relief for the month ending August 10th, 1938.

The affidavit of relator sets forth that on the 10th day of August, 1938, there were 1,645 persons applicants entitled to general relief in Silver Bow county, in whose favor relief awards had been granted amounting to $28,000; that the poor fund is depleted and there are no available funds that can be transferred to the poor fund; that on August 10th relator submitted to respondents a statement of the condition of the poor fund, levies, budget and expenditures showing that relator cannot pay applicants for relief; that the State Welfare Board has ample funds available to make a grant in aid to relator in the sum of $28,000, but that respondents have failed, neglected and refused to make such grant.

Respondents, by answer, allege that they have insufficient knowledge or information to form a belief as to whether there are 1,645 applicants entitled to relief in Silver Bow county, in whose favor awards have been granted amounting to $28,000, or as to whether the poor fund is exhausted, and, therefore, deny those allegations.

They allege affirmatively that the county is able to issue warrants in anticipation of money about to be received from taxes already levied. They allege affirmatively that the respondent board has not met in session since the demand was made upon it by the relator, and, hence, has not considered the application. The answer sets forth in substance that if the relief sought by this proceeding is granted other counties will make similar applications and these with other demands upon respondents for old age assistance and other relief provided for by Chapter 82, Laws of 1937, will soon exhaust its funds.

At the threshold of these proceedings, we are met with the assertion that the proceeding is premature since the respondent board has not yet considered and acted on the appli-

cation. It is contended that the respondent board has discretionary powers and, hence, that there is no clear legal duty to act in any particular manner which can be enforced by mandamus. This contention must be sustained at least in part. Here the state board in effect denies that there are 1,645 applicants entitled to relief and as to whom awards had been made in the sum of $28,000. The issue presented by the denial raises a question that the courts cannot consider in the first instance. Under Chapter 82 an award made by the county department is subject to review by the state department. Section XII of Part I specifically provides:

"The state department may also, upon its own motion, review any decision of a county department, and may consider any application upon which a decision has not been made by the county department within a reasonable time. The state department may make such additional investigation as it may deem necessary, and shall make such decision as to the granting of assistance and the amount of assistance to be granted the applicant as in its opinion is justified and in conformity with the provisions of this Act.

"In the case of the state department reviewing a county decision on its own motion, applicants or recipients affected by such decisions of the state department shall, upon request, be given reasonable notice and opportunity for a fair hearing by the state department.

"All decisions of the state department shall be final and shall be binding upon the county involved and shall be complied with by the county department."

Where, as here, there is an issue between the county and state department as to the number of applicants entitled to relief and the amount to which they are entitled, this court cannot by mandamus compel the state department to make a grant in aid in any definite sum in advance of action taken by the state department with relation thereto. Since, however, there is here presented a legal question as to the proper procedure to be followed after it is determined how much is needed for general relief, we have concluded to pass upon the legal ques-

tion presented because of its public importance. That question is, Must the county issue and register warrants in anticipation of revenue to be collected from taxes already levied but uncollected before it can demand and receive a grant in aid, or may the State Welfare Board in its discretion require the county so to do before it can assert that it has exhausted its resources?

This question was raised by respondents' answer by way of a defense to the merits of the action. That the county has the right to issue anticipatory warrants must be conceded. (Secs. 4753 to 4759, Rev. Codes.) The question here is, Must it do so before it can obtain a grant in aid? The answer to this question must be found in Chapter 82, Laws 1937. Section XIII of Part II of the Act provides: "The state department shall make grants-in-aid from state public welfare funds to county public welfare departments for general relief purposes, subject to the conditions in Section Ten of this part, and the county department shall make the disbursements of such State funds for relief purposes within the county." While section XIII refers to section X, it was obviously intended to mean section IX. Section IX provides:

"The state public welfare department shall have the authority to require as a condition of grants from state funds to counties for relief purposes that the board of county commissioners shall make such tax levies and establish such budgets as are needed in respect to the public assistance situation in the county, not otherwise prohibited by law. The state department of public welfare shall also have the authority to require as a condition of grants from state funds to the counties that the county board of commissioners shall make no transfers from the county poor fund or charges against the county poor fund for purposes other than for which the county poor fund is established by law, and it is hereby made mandatory upon the board of county commissioners that taxes levied and collected for the county poor fund shall be expended only for the purposes levied.

"It shall be within the authority of the state department of public welfare to make grants-in-aid from state funds to the county departments of public welfare for general relief purposes in proportion to the financial inability of the county to provide for relief assistance to its own residents.

"It is hereby also declared to be the legal and financial responsibility of the board of county commissioners to provide adequate relief to persons in need of the same according to standards established by the state department of public welfare and to the extent that county funds are available.

"To meet emergency conditions that may arise within the county the board of county commissioners is hereby empowered to declare an emergency and to make additional levies and transfers from other funds, as now provided by law."

Section XIII of Part II commands the state department to make grants to the counties for general relief, but only when the conditions set forth in section IX of Part II have been performed. The latter section provides as one of these conditions that the county commissioners must "make such tax levies and establish such budgets as are needed in respect to the public assistance situation in the county, not otherwise prohibited by law." In other words, one of the conditions prescribed by the statute is that the county commissioners must establish all budgets that are needed which are within the authority found in the statutes of the state.

Subdivision (b) of section XI of Part I declares: "It is hereby made the duty of the board of county commissioners in each county to levy the six mills required by law for the poor fund and to budget and expend so much of the funds in the county poor fund for all purposes of this Act as will enable the county welfare department to meet its proportionate share of such assistance granted in the county, and the county budget shall make provision therefor and an account shall be established for such purpose. If the six-mill levy shall prove inadequate to meet the county's proportionate share of public assistance under any part of this Act and if the county board of commissioners is unable to declare an emergency for the purpose

of providing additional funds, and if an audit by the state examiner's office proves this condition to be true and the county board has expended its poor fund only for the purposes levied, then such proportion of its public assistance as the county is unable to meet shall be paid from the state public welfare fund.''

This subdivision relates to all forms of public assistance under all parts of the Act. It likewise contains certain conditions precedent to the granting of aid by the state department to the county. Under it the six-mill levy for the poor fund must prove inadequate to meet the county's proportionate share of public assistance under any part of the Act. Manifestly, the only way in which this six-mill levy can prove to be inadequate is after it has been expended. Under our system of making tax levies and budgeting the expenditures to be made therefrom for each fiscal year, unless there is a sum of money in the treasury which was a surplus in the fund from the preceding year, the issuance of warrants and the registering of the same until the taxes so levied are collected is inevitable. Clearly this subdivision contemplates the issuance of warrants to the amount· of the tax levy.

The same subdivision of the section requires as a further condition precedent the inability of the board of county commissioners to declare an emergency for the providing of additional funds over and above the six-mill levy. Section 4613.6 enumerates the powers of the board of county commissioners with reference to the creation of an emergency budget. It will be noted that in section IX of Part II the word ''budgets'' is used in the plural. A county board of commissioners only makes one budget for each fiscal year, and when the plural ''budgets'' is used, it must include emergency budgets, as otherwise the intention of the legislature would have been clearly expressed by the use of the singular of the word.

Construing these sections together as both are a part of the same Act and both relate to grants in aid to the county for general relief, the State Board of Public Welfare is only required to make grants to the county when it is demonstrated to

the board that the county through the exercise of these powers can no longer raise the necessary funds to provide general relief.

Section V of Part II provides that all relief disbursements by the county or state department to relief recipients shall be by warrant or check representing cash upon demand, to which certain exceptions are found in the section with which we are not here concerned. It is here argued that when a county does not have the funds in the county treasury with which to redeem the warrants as issued they do not represent cash on demand. "Represent" means to stand in place of; to be the equivalent of. (Webster's New International Dictionary, 2d ed.) . These warrants when issued must be the equivalent of cash; i. e., readily convertible into cash. They are only the equivalent of cash when they may be converted into an equal amount of cash as called for in the warrant, and whenever warrants issued either in anticipation of the tax levies or emergency warrants, which are not the equivalent of cash, then the requirements of the section are not met.

· We hold that before the county can secure aid from the state it must issue warrants in anticipation of the revenues derived from the six-mill levy (required by law to be levied for the poor fund) in accordance with the budget and such additional emergency warrants as can be issued which may be freely converted into cash by the recipients without any discount. The ▮ expenditure from the poor fund in payment of interest on registered warrants drawn against the fund is a lawful expenditure from the fund.

The answer alleges in substance that in Silver Bow county ▮ the six-mill levy was so budgeted and appropriated by the county that it left only a small amount (the sum of $21,-390.39), for general relief. It alleges that the county made the appropriation in that manner "for the sole purpose of requiring and compelling the State Board of Public Welfare to make grants in aid to Silver Bow county to pay the whole cost and expense of general relief." It further alleges that the six-mill levy would produce an estimated income of $177,009.64, from which, if apportioned properly, there would have been sufficient

money for general relief to take care of general relief for at least six months, or from July to December, 1938. These allegations leave the inference that there may be excessive appropriations in some of the funds to which the $177,009.64 was budgeted and appropriated. If that be so the state board can compel such excesses to be transferred to the poor fund for general relief before the county is entitled to a grant in aid.

On the record before us the writ applied for is denied. When the state board satisfies itself, which it is its duty to do with reasonable diligence, as to the number of applicants entitled to relief and the amounts to which they are entitled, and all other conditions named in the statute have been met by the county, and the state board having funds available therefor, the county is entitled to a grant in aid.

The application for a writ is denied, and the proceeding dismissed.